UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT     FILED

2004 JAN -5  A 9:23

U.S. DISTRICT COURT
HARTFORD, CT.

ELENA L. GRIGORENKO,                    :

     Plaintiff,                       :

V.                                      :   CASE NO.  3:02CV2001(RNC)

                                  :

DAVID L. PAULS and                      :
FRANK B. WOOD,                          :

     Defendants.                      :


RULING AND ORDER

Elena Grigorenko, a university professor, brings this
diversity case against two of her former colleagues, David L.
Pauls and Frank B. Wood, claiming that they have maliciously
caused harm to her reputation and career.  The second amended
complaint attempts to plead causes of action under Connecticut
law for false light invasion of privacy, fraud, intentional
infliction of emotional distress, prima facie tort, and negligent
misrepresentation.  Of these five counts, defendants have moved
to dismiss all except the last for failure to state a claim on
which relief can be granted.[1]  Fed. R. Civ. P. 12(b)(6).
Crediting plaintiff's allegations, none of the four counts in

---

[1]  Defendants also move to dismiss for lack of subject
matter jurisdiction on the ground that plaintiff cannot recover
more than $75,000, exclusive of interest and costs.  See 28
U.S.C. § 1332.  Dismissal on this basis would be improper because
defendants have not established to a legal certainty that
plaintiff cannot recover the jurisdictional amount.  See Scherer
v. Equitable Life Assurance Society, 347 F.3d 394, 397 (2d Cir.
2003).

question states a claim for relief under Connecticut law. Accordingly, the motions to dismiss are granted.

I. Facts

The second amended complaint alleges the following facts, which are assumed to be true for present purposes. Plaintiff, an Associate Professor of Child Studies and Psychology at Yale University, was the junior member of a research team headed by Pauls, who also worked at Yale, and Wood, who worked at Wake Forest University. The three collaborated on research projects and publications and got along well until plaintiff turned down a position at Harvard Medical School shortly after Pauls had accepted a position there.

Following plaintiff's refusal of Harvard's offer, the defendants jointly submitted a letter to David Kessler, Dean of the Yale University School of Medicine, expressing their belief that she may have failed to properly cite source material in her published works and accusing her of plagiarizing a table from a book co-authored by Wood. In accordance with established procedures, Susan Hockfield, Dean of the Yale Graduate School, appointed an inquiry committee to conduct a preliminary investigation. While the investigation was pending, defendants submitted a letter to Hockfield levying another charge of plagiarism. In an effort to bolster their charges, defendants misrepresented the evidence on which they relied.

2

II.    Discussion

A.    False Light Invasion of Privacy

Connecticut has adopted the definition of false light

invasion of privacy contained in the Restatement (Second) of

Torts § 652E (1997), which provides,

> One who gives publicity to a matter concerning another
> that places the other before the public in a false
> light is subject to liability to the other for invasion
> of privacy, if (a) the false light in which the other
> was placed would be highly offensive to a reasonable
> person, and (b) the actor had knowledge of or acted in
> reckless disregard as to the falsity of the publicized
> matter and the false light in which the other would be
> placed.

Unlike the limited publication required to state a claim for

defamation, the publicity element of a false light invasion of

privacy claim requires publication of the allegedly false matter

to the public at large or to so many persons as to make it

substantially certain that the matter will become public

knowledge.  See Pace v. Bristol Hosp., 964 F. Supp. 628, 631 (D.

Conn. 1997); Handler v. Arends, 1995 WL 107328, *13 (Conn. Super.

March 1, 1995).

Plaintiff alleges that defendants disclosed, or caused to be

disclosed, allegations of plagiarism to nine persons at Yale and

three persons outside the Yale community.[2]  Such limited

---

[2]  Plaintiff's second amended complaint alleges that, in
addition to Kessler and Hockfield, defendants disclosed, or
caused to be disclosed, the plagiarism allegations to: six of
plaintiff's colleagues at the Yale Child Center; the Chair of
(continued...)

disclosure falls well short of publicizing the allegations in such a manner and to such an extent as to make it substantially certain that they will become public knowledge.  See Handler, 1995 WL 107328, *13 (statement to ten of plaintiff's co-workers did not constitute "publicity"); see also Chertkova v. Conn. Gen. Life Ins. Co., No. CV980486346S, 2002 WL 1902988, * 4 (Conn. Super. July 12, 2002), aff'd, 76 Conn. App. 907 (2003) (no publication where defendant disseminated allegations to three of plaintiff's subsequent employers).  Accordingly, this claim fails.

B.    Fraud

"Fraud consists of deception practiced in order to induce another to part with property or some legal right, and which accomplishes the end designed." Billington v. Billington, 220 Conn. 212, 217 (1991).  To state a claim for fraud on which relief can be granted, therefore, plaintiff must allege that defendants made a false representation, which they knew to be untrue, to induce her to act on the misrepresentation, and that she did so act to her detriment.  Leonard v. Comm'r of Revenue Servs., 264 Conn. 286, 296 (2003).

Plaintiff's claim does not fit this framework.  She alleges

---

[2](...continued)
Yale's Department of Genetics, where Pauls worked prior to leaving for Harvard; a professor at the Department of Psychology at the University of Utah; a program officer at the National Institutes of Health; and a research associate at the Department of Neurology at Wake Forest University, where Wood works.

that during their years of collaboration, defendants falsely represented to her that they had no concerns about her academic integrity; that they made these representations to assure her continued collaboration; and that she was thereby induced to submit for publication an article that they now cite as evidence of plagiarism. She makes no allegation, expressly or by fair implication, that defendants told her the article was properly cited, knowing it was not, to induce her to publish it, so they could gain some undeserved benefit or cause her some harm. In the absence of such allegations, the fraud claim is untenable.

C.    Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress, plaintiff must allege: "(1) that the [defendants] intended to inflict emotional distress or . . . knew or should have known that emotional distress was the likely result of [their] conduct; (2) that [their] conduct was extreme and outrageous; (3) that [their] conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Appleton v. Bd. of Educ., 254 Conn. 205, 210 (2000). Intentional infliction of emotional distress claims are often pleaded but rarely get very far because liability for this intentional tort has been found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. at 210-11. Defendants' alleged conduct cannot reasonably be characterized as extreme and outrageous in this sense. Cf. Ziobro v. Conn. Inst. for the Blind, 818 F. Supp. 497, 502 (D. Conn. 1993) (defendants' conduct in terminating plaintiff not extreme and outrageous, even though formal inquiry exonerated plaintiff and showed her termination to be unjustified and despite evidence of history of animus between the parties).

D.    Prima Facie Tort

The second amended complaint adds a claim for prima facie tort, which is essentially unknown to modern tort law in Connecticut. The last time the Connecticut Supreme Court – or any appellate court in Connecticut – addressed the viability of such a cause of action was nearly a century ago. See Connors v. Connolly, 86 A. 600 (Conn. 1913). At that time, the tort consisted of intentional infliction of harm, resulting in damage, without legal excuse or justification. Id. at 602 (following Aikens v. Wisconsin, 195 U.S. 194, 206 (1904)). Liability could not be imposed for otherwise lawful conduct unless the conduct was contrary to public policy. See Connors, 86 A. at 603.

Assuming, without deciding, that the Connecticut Supreme Court would continue to recognize a cause of action for prima facie tort, plaintiff's claim fails because she has not alleged a

6

basis for finding that defendants' conduct violated a recognized public policy.  The absence of such an allegation is particularly significant in this case because Yale imposes an affirmative obligation on scholars to report academic misconduct and public policy strongly supports Yale's freedom to deal with such matters as it deems reasonable and proper.

In this context, defendants' submissions to Yale cannot constitute a prima facie tort unless they had the purpose and effect of abusing the process established by Yale for investigating and resolving allegations of academic misconduct. To plead a viable claim, therefore, plaintiff must allege that the inquiry committee appointed by Dean Hockfield rejected defendants' allegations as groundless.  In the absence of such an allegation, permitting plaintiff to proceed would not help vindicate a recognized public policy as contemplated by the prima facie tort cause of action.  If anything, it would conflict with the important public policy protecting academic freedom.

III. Conclusion

Accordingly, defendants' motions to dismiss [Docs. # 38, 40] are hereby granted as to the claims of false light invasion of privacy, fraud, intentional infliction of emotional distress, and prima facie tort.  This leaves only the negligent misrepresentation claim against Wood.

So ordered.

Dated at Hartford, Connecticut this 31st day of December 2003.

_____
Robert N. Chatigny
United States District Judge